## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **LUIS DIAZ, #528592,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-00083** |
| | ) | **Judge Trauger** |
| **WARDEN MARTIN FRINK,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM

### I. Introduction

On February 2, 2021, state inmate Luis Diaz filed a pro se Petition for the Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) He subsequently paid the filing fee and was given an opportunity to amend his petition, with the caution "that once the amended petition is filed, it will be the only petition reviewed by the court or answered by the respondent, so it must be complete in itself[.]" (Doc. No. 8 at 2.)

The petitioner filed an Amended Petition on July 16, 2021 (Doc. No. 13), challenging his 2013 conviction by a Davidson County jury on six counts of aggravated sexual battery and his resulting 20-year prison sentence. (*Id.* at 1.) The respondent filed an Answer to the Amended Petition on October 19, 2021. (Doc. No. 26.) The petitioner did not file a reply to the Answer.

Upon review of the pleadings and the state-court record (Doc. No. 9), the court finds that an evidentiary hearing is not required to resolve this matter. *See Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (stating that evidentiary hearing is not required "if the record clearly indicates that the petitioner's claims are either barred from review or without merit"). As explained below, the petitioner is not entitled to habeas relief.

## II. Procedural History

Following the petitioner's 2013 conviction, the trial court held a sentencing hearing on January 14, 2014. (Doc. No. 9-8.) The petitioner's trial counsel participated in the sentencing hearing, where the petitioner was also represented by new counsel retained for that purpose. (*See id.*) The petitioner's new attorney represented him on appeal to the Tennessee Court of Criminal Appeals (TCCA), raising challenges to both the conviction and the 20-year sentence. (*See* Doc. No. 9-12.) The TCCA rejected these challenges and affirmed the trial court in a decision dated September 18, 2015. (Doc. No. 9-14); *State v. Diaz*, No. M2014-01685-CCA-R3-CD, 2015 WL 5472288 (Tenn. Crim. App. Sept. 18, 2015). The Tennessee Supreme Court denied discretionary review on February 18, 2016. (Doc. No. 9-20.)

On January 9, 2017, the petitioner returned to the trial court to file a pro se petition for post-conviction relief. The post-conviction trial court appointed counsel, who filed two amendments to the petition. After holding an evidentiary hearing (Doc. No. 9-22), the trial court denied post-conviction relief. (Doc. No. 9-21.) The petitioner appealed this denial to the TCCA. The TCCA affirmed the denial of post-conviction relief. (Doc. No. 9-26); *Diaz v. State*, No. M2019-01000-CCA-R3-PC, 2020 WL 2781591 (Tenn. Crim. App. May 28, 2020). The Tennessee Supreme Court then denied the petitioner's application for permission to appeal the TCCA's decision (Doc. No. 9-29), as well as his subsequent application for rehearing. (Doc. No. 9-31.)

This § 2254 action was commenced within the applicable statute of limitations. (*See* Answer, Doc. No. 26 at 2.)

## III. Facts

According to the TCCA, "[t]his case concerns a stepfather's intimate touching of his six-year-old stepdaughter." *State v. Diaz*, 2015 WL 5472288, at *1; *Diaz v. State*, 2015 WL 5472288,

at *1. Among other issues raised on direct appeal, the petitioner challenged the sufficiency of the convicting evidence. This evidence was detailed by the TCCA and held constitutionally sufficient to support the conviction. *See State v. Diaz*, 2015 WL 5472288, at *1–7. In brief, the facts described by the TCCA are these. Testimony from both the victim (who was 8 years old at the time of trial) and her grandmother established that the petitioner lived with the victim's mother (to whom he was married), a younger child that they shared, and multiple other children of the mother in a cramped apartment and, for a short time, in the grandmother's house, where the family shared a bedroom. The victim testified that she and the petitioner slept on the floor of the apartment's bedroom while her three siblings slept in the bed with her mother, and that the petitioner abused her by sexual touching her (without penetration) on five occasions, all but one of which occurred in the bedroom. The victim further testified that another such occasion of abuse occurred in the bathroom of her grandmother's home. *Id.* at *1–2.

During this time, the victim's three older, teenaged brothers (who had been living with a family friend) moved in with their mother, the petitioner, and the younger children. These older brothers testified that the petitioner soon became overprotective and controlling with respect to the victim and the other young siblings and suspicious of the older boys. One of the older boys learned of the alleged abuse and informed the grandmother. The victim also informed her mother and grandmother. Shortly thereafter, the mother made an official report of the victim's allegations against the petitioner. *Id.* at *1–4.

The victim was then referred for an interview by a social worker and a forensic medical examination by a physician's assistant, both of which occurred three or four weeks after the victim's last contact with the petitioner. Both of these professionals testified that the victim's allegations confirmed the need for a physical examination, which was normal—an unsurprising

3

result, given the nature of the alleged abuse and the time since the last alleged touching. *Id.* at *4–5.

The petitioner subsequently submitted to an interview by two Metro Nashville Police detectives. Video of the interview was introduced at the petitioner's trial and played for the jury. During the interview, the petitioner blamed the mother's three older sons for the turbulence in the household that occurred after their arrival and indicated that the allegations of abuse against him were the product of both the victim's and her mother's anger at him for his reaction to this turbulence. The petitioner's proof at trial consisted of testimony from the victim's mother, his own mother, and from the petitioner himself. In his testimony, the petitioner denied the truth of the victim's allegations against him and stated that the victim's mother was responsible for the false allegations, which she encouraged after the petitioner refused her demand for money and threatened to leave her. *Id.* at *5–7.

The petitioner has not renewed his challenge to the sufficiency of the evidence before this court. His habeas claims are almost exclusively focused on his assertion of ineffective assistance of counsel. The petitioner also raised claims of counsel's ineffective assistance during state post-conviction review. The following summary of the record generated during the post-conviction process is taken from the TCCA's opinion affirming the denial of post-conviction relief:

> On January 9, 2017, the Petitioner filed a pro se petition seeking post-conviction relief. Following the appointment of counsel, the Petitioner filed an amended petition on February 27, 2017. On May 25, 2017, a second amended petition was filed, wherein the Petitioner alleged he received ineffective assistance of counsel in the following ways: (1) failure to communicate multiple plea offers from the State; (2) failure to withdraw or attempt to withdraw from the case when communication became an issue; and (3) failure to properly investigate potential witnesses. [footnote: Although the Petitioner raised several other grounds of ineffectiveness in his multiple petitions for post-conviction relief he has abandoned those on appeal. Accordingly, these issues are waived.] The post-conviction court held an evidentiary hearing on May 3, 2019.

4

Trial counsel testified that he had been practicing law for twenty-three years and practiced almost exclusively criminal law for twenty years. Prior to the Petitioner's case, trial counsel had represented clients on rape and sexual harassment charges, including those involving children. Trial counsel estimated that he represented the Petitioner for "just a little over two years," but could not be sure because he disposed of files after "a certain amount of years"[;] he recalled that he worked "seventy to eighty hours total" on the Petitioner's case.

Trial counsel first met with the Petitioner while he was in custody. Trial counsel testified that the Petitioner maintained that he "didn't do any of the things he was accused of" and did not want to serve jail time. Trial counsel recalled "several [plea] offers" prior to trial. The Petitioner subsequently made bond, and trial counsel began meeting with him at trial counsel's office. Trial counsel could not recall how many times he met with the Petitioner, but estimated it to be "at least seven or eight times." Trial counsel's assistant, who served as an interpreter, was also present during the meetings. Trial counsel testified that the Petitioner would sometimes bring family members to the meetings. Trial counsel testified that the Petitioner did not provide him with a list of potential witnesses.

Trial counsel asserted that the first plea offer was "some sort of split confinement, but it was very[,] very loose" and it "was never a firm offer." After discussing the loose offer, the Petitioner rejected it. The second offer was "a ten-year offer at a percentage." The Petitioner refused this offer, and the offer was subsequently rescinded after the State spoke with the victim. Trial counsel could not recall any other plea offers and testified that "a twenty-year-offer at thirty-five percent [ ] would have [been] rejected," reasoning that the Petitioner "didn't even want to go to jail when [they] were talking about a one-year [plea offer] and then [the Petitioner] rejected the ten years at a percentage." At the time of trial, the Petitioner still maintained his innocence.

Trial counsel asserted that he explained parole and parole eligibility to the Petitioner and "someone else that was with [the Petitioner]" during a meeting at trial counsel's office. Trial counsel could not recall the Petitioner's immigration status, but he testified that he usually explained the immigration consequences of these types of proceedings because his office had some experience with immigration work.

Trial counsel testified that the Petitioner had an issue paying for his entire retainer, but claimed that he would not "abandon somebody close to trial because of a financial issue[.]" Trial counsel averred that he did not become upset with the Petitioner over lack of payment and it was not an issue. Trial counsel could not remember the Petitioner's asking him to withdraw nor could he recall filing a motion to withdraw. Trial counsel did not represent the Petitioner at his sentencing hearing. Trial counsel testified that the Petitioner and the Petitioner's family "were upset with [ ] the outcome[ ] of the trial."

Trial counsel testified that his trial strategy was not to attack the victim's mother on "outside incidences." Likewise, trial counsel did not use an audio recording of "threatening messages" from [her] during trial. Trial counsel attempted to create reasonable doubt by proving that the victim was living in various locations with her mother and that the Petitioner had "no reason or ability to do some of the things [ ] he was charged with."

Trial counsel did not interview the victim prior to trial. Trial counsel spoke with the Petitioner about his charges and discussed the indictment. Trial counsel explained the possible sentencing range and the judge's ability [to] "stack[ ]" multiple sentences. These discussions were prompted by the plea offers, which the Petitioner rejected "because he did not want to go to jail again."

On cross-examination, trial counsel confirmed that he received discovery in the Petitioner's case and reviewed it with the Petitioner. Trial counsel reviewed the victim's forensic interview and informed the Petitioner of the contents. Additionally, trial counsel and the Petitioner discussed the Petitioner's decision to testify at trial on his own behalf. The Petitioner decided to testify, and trial counsel prepared the Petitioner for his testimony prior to trial.

Ines Palacios was the Petitioner's ex-sister-in-law and had known the Petitioner for eleven years. Ms. Palacios had been present for one meeting between trial counsel and the Petitioner. While at trial counsel's office, Ms. Palacios did not hear trial counsel decline offers on behalf of the Petitioner. However, while present in court with the Petitioner, Ms. Palacios did recall the Petitioner's telling trial counsel that he wanted to accept a plea offer, but she could not understand what the plea offer entailed.

Seccorro Moreno, the Petitioner's mother, testified that she was present during meetings between the Petitioner and trial counsel. During these meetings she "didn't understand [the conversation] really well." Ms. Moreno recalled trial counsel's relaying to the Petitioner an offer to serve one year, but trial counsel did not accept the offer because "[the Petitioner] had already spent six months in jail." Ms. Moreno asserted that trial counsel had declined the offer before speaking with the Petitioner.

Ms. Moreno testified that trial counsel charged her $6,500 to represent the Petitioner. Ms. Moreno would pay a portion "every week or every two weeks based [on her] financial standing[.]" Ms. Moreno's last payment to trial counsel was declined when trial counsel informed Ms. Moreno that he would not be representing the Petitioner any longer following the trial. Ms. Moreno did not witness trial counsel's becoming upset about lack of payment.

On cross-examination, Ms. Moreno testified that she paid trial counsel a total of $5,800. Ms. Moreno did not know how many times the Petitioner and trial counsel met prior to trial. After the Petitioner was convicted, Ms. Moreno recalled the

Petitioner's sending a letter to trial counsel in which he stated he did not want trial counsel to represent him any longer. Ms. Moreno was not present during the trial and was unaware of the amount of time or preparation that trial counsel had put into the Petitioner's case.

Alberto Diaz, the Petitioner's brother, testified that he was present during a meeting at trial counsel's office. During this meeting, trial counsel "had denied a[ ] [plea] offer of one year ... because [the Petitioner] had already completed six months [in custody.]" Upon hearing this, Mr. Diaz witnessed the Petitioner become "angry." Mr. Diaz asserted that the relationship between the Petitioner and trial counsel began to "break[ ] down" prior to trial because trial counsel "wasn't showing up to court dates" and "wasn't communicating with [the Petitioner]."

On cross-examination, Mr. Diaz explained that the Petitioner was not present during the meeting at trial counsel's office because the Petitioner was still in jail. Mr. Diaz did not visit the Petitioner in jail and was aware of the Petitioner's reaction to the rejected plea offer because of telephone conversations with the Petitioner. Mr. Diaz asserted that the Petitioner was not angry or upset merely because he was in jail. Mr. Diaz testified that the Petitioner "was always very repetitive saying that he had" not committed the crimes he was charged with and that the Petitioner was "never willing to go to jail for it."

The Petitioner testified that he hired trial counsel upon learning he was being investigated for these allegations, but prior to speaking with the police. The Petitioner recalled signing paperwork with trial counsel retaining him for the amount of $3,500. The Petitioner asserted that trial counsel did not visit him while he was in jail.

The Petitioner recalled trial counsel's relaying a plea offer of twenty years to be served at thirty-five percent. Trial counsel had rejected this offer before informing the Petitioner about it. The Petitioner asked trial counsel to speak with the State to "give [the Petitioner] the same [plea offer] or another better offer." The Petitioner testified that he first heard about a split confinement offer during trial counsel's testimony. Regarding the plea offer to serve one year at one-hundred percent, the Petitioner asserted that he told trial counsel he wanted to take the offer, but trial counsel rejected the offer because the Petitioner had "already [done] six months in county jail and [the Petitioner] shouldn't have to do any more time."

The Petitioner asserted that he had written trial counsel a letter while in jail threatening to fire him. After posting bond, the Petitioner asked trial counsel to withdraw, but trial counsel did not think the judge would allow such a withdrawal "in the middle of trial." The Petitioner asked trial counsel to withdraw because "[trial counsel] never came to visit [the Petitioner] in jail" and trial counsel became upset because of lack of payment before trial. Trial counsel had conducted the bond hearing with no advance payment.

The Petitioner asserted that trial counsel should have called Ines Palacios and Irene Reed to testify at trial. According to the Petitioner, Ms. Palacios would have testified that [the victim's mother] sent naked pictures, posing as Ms. Palacios, to men to break up Ms. Palacios's relationship with her significant other because the Petitioner was threatening to leave [the victim's mother]. Additionally, Ms. Reed would have testified that [the victim's mother] "had coerced minors in the past to charge criminal allegations of sexual conduct[.]" The Petitioner contacted Ms. Reed and averred that she had never been contacted by trial counsel. The Petitioner did not call Ms. Reed to testify at the post-conviction hearing.

The Petitioner and trial counsel had discussed cross-examination of the victim's grandmother, … and the Petitioner told trial counsel that [she] "coerced" other minors to lie about similar allegations "in a separate unrelated incidence."

The Petitioner stated that he and [the victim's mother] had a falling out before the Petitioner was charged and that [she] "threaten[ed] [the Petitioner] that if [he] reenlisted in the Army that she was going to make sure" to send him to prison. The Petitioner began recording conversations with [her] and claimed that he had discussed these recordings and the contents with trial counsel. On redirect examination, the Petitioner testified that trial counsel did not explain that if he were convicted at trial, he would have to serve one-hundred percent of his sentence.

On cross-examination, the Petitioner testified that had he "been advised [of] the consequences of going to trial" and that if he had known or been advised of the "less probable" likelihood of success at trial under the circumstances, he would have "likely" taken a plea offer. The Petitioner recalled signing a contract with trial counsel, but had not asked counsel for a copy for his own records. The Petitioner had paid trial counsel $3,500 before trial. The Petitioner denied that trial counsel reviewed discovery with him, but said trial counsel gave him a "stack of documents" after the first day of trial and instructed the Petitioner to read the documents. The Petitioner did not read the documents because of his "mental state" at the time. The Petitioner asserted that he and trial counsel "never discussed the details of the allegations." In regards to trial preparation, the Petitioner said trial counsel only provided a baseball analogy.

The post-conviction court denied the Petitioner's claims in an order filed June 4, 2019. The post-conviction court found Ms. Moreno and Mr. Diaz's testimony "troubling" and credited trial counsel's testimony that he relayed all plea offers to the Petitioner.

*Diaz v. State*, 2020 WL 2781591, at *3–6.

## IV. Claims of the Amended Petition

The Amended Petition asserts the following claims to habeas relief:

1.      Trial counsel failed to communicate to the petitioner the plea offers made by the State.

2.      Trial counsel failed to seek leave to withdraw from the representation when asked to do so by the petitioner, on grounds of communication issues and the petitioner's inability to meet counsel's demands for payment.

3.      When the police asked the petitioner to submit to an interview about the victim's allegations of abuse, trial counsel advised him to go to the interview and speak with police alone, outside of counsel's presence.

4.      Sentencing counsel failed to discover and introduce as mitigation evidence the fact that the petitioner had assisted authorities in arresting an unrelated suspect for robbery crimes.

5.      Post-conviction counsel failed to make a timely request for funds to procure an interview with a potential post-conviction witness.

6.      Trial counsel and post-conviction counsel failed to interview potential witnesses.

7.      The petitioner's due process rights were violated when the trial court allowed the State to introduce evidence of his prior bad acts for impeachment purposes, despite the State's failure to provide the required notice of its intent to do so.

8.      The petitioner's equal protection rights were violated when the state courts accepted trial counsel's assertion that he informed the petitioner of the plea offers made by the State, despite a lack of corroborating evidence in the record.

9.      Trial counsel purposely undermined the petitioner's defense because he did not receive timely payment of fees under the retainer agreement, leading counsel to tell the petitioner in the days leading up to trial that (a) the proper response to his questions at trial would be to redirect toward the jury as if he were hitting a baseball pitched by counsel, and (b) counsel would not be able to work a trial efficiently if his fee was not paid.

10. Post-conviction counsel failed to subpoena the trial judge's bailiff to testify concerning trial counsel's comments on the first day of trial about the petitioner owing him money.

11. Post-conviction counsel failed to use the available evidence to impeach trial counsel's testimony at the post-conviction evidentiary hearing.

(Doc. No. 13 at 5–26.)

**V. Analysis**

A. <u>Legal Standard</u>

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Upon finding a constitutional error on habeas corpus review, a federal court may only grant relief if it finds that the error "had substantial and injurious effect or influence" upon the conviction. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Peterson v. Warren*, 311 F. App'x 798, 803–04 (6th Cir. 2009).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). AEDPA's requirements "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007) (citations omitted). As the Supreme Court has explained, AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction

10

through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). Prior to the passage of AEDPA, district courts applied de novo review to determine whether "the relevant state court had erred on a question of constitutional law or on a mixed constitutional question." *Williams v. Taylor*, 529 U.S. 362, 402 (2000) (O'Connor, J., concurring). But now, where state courts have ruled on the merits of a claim, AEDPA imposes "a substantially higher threshold" for obtaining relief than a de novo review of whether the state court's determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

Specifically, a federal court may not grant habeas relief on a claim rejected on the merits in state court unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). The Supreme Court has repeatedly held "that AEDPA, by setting forth [these] necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" *White v. Wheeler*, 577 U.S. 73, 77 (2015) (quoting *Burt v. Titlow*, 571 U.S. 12, 19 (2013)).

A state court's legal decision is "contrary to" clearly established federal law under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13. An "unreasonable application" under this subsection occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case." *Id.* at 413; *White v. Woodall*, 572 U.S. 415, 426 (2014). A state court decision is not unreasonable under this standard simply because the federal court, "in its independent judgment," finds it erroneous or incorrect. *Williams*, 529 U.S. at 411. Rather, to be actionable under § 2254(d)(1), the state court's decision "'must be objectively unreasonable, not merely wrong; even clear error will not suffice.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *Woodall*, 572 U.S. at 419). An objectively unreasonable decision is one "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Similarly, a district court on habeas review may not find a state court factual determination to be unreasonable under § 2254(d)(2) simply because it disagrees with the determination. *Young v. Hofbauer*, 52 F. App'x 234, 237 (6th Cir. 2002). Rather, the determination must be "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)) (internal quotation marks omitted). Moreover, a state court's factual determinations "shall be presumed to be correct" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Davis v. Ayala*, 576 U.S. 257, 271 (2015) ("State-court factual findings . . . are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting *Rice v. Collins*, 546 U.S. 333, 338–39 (2006)). Finally, the petitioner may not prevail under § 2254(d)(2) simply by showing that a fact was unreasonably determined; he

12

Case 3:21-cv-00083    Document 27    Filed 03/12/24    Page 12 of 29 PageID #: 1514

"must show that the resulting state court decision was 'based on' that unreasonable determination."
*Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

AEDPA's standard for granting relief on a claim rejected on the merits by a state court "is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Richter*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). This standard "was meant to be" a high hurdle for petitioners, consistent with the principle that habeas corpus functions as a guard against only "extreme malfunctions" in the state's administration of criminal justice. *Harrington*, 562 U.S. at 102; *see also Woods*, 575 U.S. at 316.

Review under AEDPA is not only demanding, but also ordinarily unavailable to state inmates who have not fully exhausted their remedies in the state court system. Title 28 U.S.C. §§ 2254(b) and (c) provide that, subject to certain exceptions, a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless the prisoner has presented the same claim sought to be redressed in a federal habeas court to the state courts. *Pinholster*, 563 U.S. at 182; *Kelly v. Lazaroff*, 846 F.3d 819, 828 (6th Cir. 2017) (quoting *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009)) (federal claim is exhausted if it was presented "under the same theory" in state court). This rule has been interpreted by the Supreme Court as one of total exhaustion, *Rose v. Lundy*, 455 U.S. 509 (1982), meaning that, as of the time of the habeas petition's filing, there can no longer be any available state remedy for any of its claims; if a state remedy is available for any habeas claim, the entire petition is subject to dismissal or, in limited circumstances, to stay and abeyance while the unexhausted claim is pursued in state court. *Rhines v. Weber*, 544 U.S. 269, 275–78 (2005). A habeas petition is thus fully exhausted if each and every claim was first fairly

presented to the state appellate court[1] as a federal constitutional claim in substance, if not explicitly. *See Gray v. Netherland*, 518 U.S. 152, 162–63 (1996); *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (requiring the presentation of "the legal and factual substance of every claim to all levels of state court review").

However, because the exhaustion requirement "refers only to remedies still available at the time of the federal petition," it may also be "satisfied if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law." *Gray*, 518 U.S. at 161 (citations and internal quotation marks omitted). The doctrine of procedural default is thus a corollary to the rule of exhaustion, one which ordinarily bars habeas review of claims that were not "fairly presented" for merits review in state court, either because they were presented in a way that failed to comport with state procedural rules or because they were not presented at all and no longer can be presented under state law. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (acknowledging "the interplay of these two doctrines" and stating that, to avoid an end-run around the exhaustion requirement and "the values that it serves," "we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts.") (emphasis in original; internal citations and quotation marks omitted). If the state court decides a claim on "adequate and independent state grounds"— typically a procedural rule prohibiting the state court from reaching the merits of the constitutional claim—the claim will ordinarily be barred from federal habeas review because of its procedural default. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977*); see also Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision

---

[1] In Tennessee, the Court of Criminal Appeals is the highest appellate court to which appeal must be taken in order to properly exhaust a claim. *See* Tenn. Sup. Ct. R. 39; *Adams v. Holland*, 330 F.3d 398, 402–03 (6th Cir. 2003).

14

of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment."); *Coleman v. Thompson*, 501 U.S. 722 (1991) (same). Likewise, if a claim has never been presented to the state courts, but a state-court remedy is no longer available (e.g., when an applicable statute of limitations bars a claim or state law deems the claim waived),[2] then the claim is technically (though not properly) exhausted but barred by procedural default. *Coleman*, 501 U.S. at 731–32.

If a claim is procedurally defaulted, "federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750. The burden of showing cause and prejudice to excuse defaulted claims is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754). "'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (emphasis in original). Examples of cause include the unavailability of the factual or legal basis for a claim, interference by officials that makes compliance "impracticable," or attorney error that violates the right to counsel's effective assistance. *Id.* at 753–54. To establish prejudice, a petitioner must demonstrate that the constitutional error asserted in his defaulted claim "worked to his actual and substantial

---

[2] The Tennessee Post-Conviction Procedure Act provides that "[i]n no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment," and establishes a one-year statute of limitations for filing that one petition. Tenn. Code Ann. § 40-30-102(a) and (c). The Act further provides that "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," unless that ground could not be presented due to unconstitutional state action, or is based on a new and retroactive constitutional right that was not recognized at the time of trial. *Id.* § 40-30-106(g).

15

disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) (finding that "having shown cause, petitioners must show actual prejudice to excuse their default"). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). Likewise, if a petitioner cannot establish prejudice, the question of cause is immaterial.

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a "narrow exception" to the bar of an unexcused default in cases where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392–93 (2004) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)); *accord Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). To obtain habeas review under this narrow exception to the procedural-default rule, the petitioner would need to demonstrate his factual innocence, not the mere legal insufficiency of the State's proof; a miscarriage-of-justice claim is not supported by an assertion of mere legal innocence. *Lee v. Brunsman*, 474 F. App'x 439, 442 (6th Cir. 2012) (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998), and *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)).

B. Claims to Relief

1. Non-cognizable Claims

As an initial matter, the petitioner's claims that he was deprived of the effective assistance of counsel during post-conviction proceedings—when his attorney allegedly failed in various ways to pursue and develop testimonial evidence before and during the post-conviction evidentiary

16

hearing (Claims 5, 6,[3] 10, and 11)—are not cognizable in federal habeas. This is because his constitutional right to "the Assistance of Counsel for his defence," U.S. Const. amend. VI, does not extend to collateral proceedings. *Hugueley v. Mays*, 964 F.3d 489, 499 (6th Cir. 2020) (explaining that prisoners claiming trial counsel's ineffectiveness are often unrepresented because "there is no constitutional right to counsel in collateral proceedings," where such claims normally must be raised). Accordingly, as a matter of law, claims based on counsel's "ineffectiveness or incompetence . . . during . . . collateral post-conviction proceedings" are not viable claims to habeas relief. 28 U.S.C. § 2254(i).

### 2. Cognizable but Procedurally Defaulted Claims

#### a. Ineffective Assistance Claims

Claims 2, 3, 4, 6, and 9 of the Amended Petition all present cognizable claims of the ineffective assistance of trial counsel (IATC) under the Sixth Amendment. Such claims are properly analyzed under the two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing the petitioner; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the petitioner of a fair trial. *Id.* at 687.

However, the respondent asserts the defense of procedural default in response to each of these claims, citing either the petitioner's failure to pursue them on appeal after they were raised and rejected in the post-conviction trial court, or his failure to raise them in state court at all. While the petitioner has failed to respond to this procedural defense, he appears to have anticipated it in the Amended Petition, where he acknowledges his failure to raise certain issues on post-conviction appeal and faults post-conviction appellate counsel for their waiver. (*See* Doc. No. 13 at 8, 10, 11,

---

[3] Claim 6 also asserts that trial counsel failed to interview potential witnesses.

21). Unfortunately, while counsel's failure to raise substantial IATC claims during *initial* post-conviction proceedings may qualify as cause excusing the waiver of those claims under the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012), et al., [4] *see Hugueley*, 964 F.3d at 499–500, if the IATC claim is waived by counsel's failure to pursue it on post-conviction *appeal*, then such failure cannot operate as cause for the default of the claim. *West v. Carpenter*, 790 F.3d 693, 698–99 (6th Cir. 2015). Claims 2, 6, and 9 fit into this category, having been raised and denied in the post-conviction trial court (*see* Doc. No. 9-21 at 96–99) but not pursued on post-conviction appeal, where counsel raised only the issue of trial counsel's failure to inform the petitioner of the State's plea offers. (*See* Doc. No. 9-24 at 2.) Because these claims were denied by the trial court and defaulted on post-conviction appeal, "*Martinez* does not apply," *West*, 790 F.3d at 699, and the petitioner makes no other attempt to show cause excusing the default. Accordingly, Claims 2, 6, and 9 are not subject to further review in this court.

As to the claims of trial counsel's ineffectiveness in advising the petitioner to submit to a police interview without counsel present (Claim 3), and sentencing counsel's ineffectiveness in failing to discover and introduce mitigation evidence (Claim 4), these claims were not fairly

---

[4] In *Martinez*, the Supreme Court modified its prior rule—that a procedural default cannot be excused by reference to a post-conviction attorney's ignorance or inadvertence—"by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9. This exception stems from the recognition, "as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim" of trial counsel's ineffectiveness when that claim could not have been raised on direct appeal because of state procedural rules. *Id.* at 13. In *Trevino v. Thaler*, 569 U.S. 413 (2013), the Supreme Court extended the applicability of the *Martinez* exception to states with procedural frameworks that do not preclude an ineffective-assistance claim on direct appeal, but make it unlikely that the opportunity to raise that claim at that time will be a meaningful one. *Id.* at 429. The Sixth Circuit then held in *Sutton v. Carpenter*, 745 F.3d 787 (6th Cir. 2014), that under Tennessee's procedural scheme, the initial post-conviction proceeding is the first meaningful opportunity to raise a claim of ineffective assistance of trial counsel. *Id.* at 795–96.

presented to the state courts[5] and cannot now be presented due to the procedural restrictions and limitations contained in the Tennessee Post-Conviction Act. *See* Tenn. Code Ann. §§ 40-30-102(a), (c), 40-30-106(g). Nor does the Amended Petition offer any grounds for finding cause or prejudice excusing their procedural default.

Even if it could be shown that post-conviction counsel was ineffective in failing to raise Claims 3 and 4 during initial post-conviction proceedings, the claims must be "substantial"—that is, they must "ha[ve] some merit" justifying their adjudication despite the default—if post-conviction counsel's failure to raise them is to qualify as cause for the default. *Atkins v. Holloway*, 792 F.3d 654, 660 (6th Cir. 2015) (quoting *Martinez*, 566 U.S. at 14). As the respondent points out, the mere fact that trial counsel may have advised the petitioner to "go alone" to a non-custodial police interview and "tell them the truth" (Doc. No. 13 at 18) does not suffice to substantiate an ineffective-assistance claim, particularly in light of the interviewing police detective's trial testimony that the February 28, 2012 interview was "just a fairly straight-forward interview" in which the petitioner made claims (without supporting evidence) about sexual misbehavior and prior false reporting of sexual abuse by the victim's mother and/or her older sons, but did not divulge any self-incriminating information. (Doc. No 9-5 at 25–28, 33–37.) That description is consistent with the fact that the petitioner was not indicted and arrested until several months later, in June 2012. (*See* Doc. No. 13 at 18; Doc. No. 9-1 at 3.) In sum, Claim 3 does not present a substantial claim that counsel performed deficiently and that the petitioner was thereby prejudiced.

---

[5] The final order of the post-conviction trial court, in describing the petitioner's hearing testimony, referred to his belief that he and trial counsel had an initial, "verbal agreement" to the representation when counsel "advised the Petitioner to speak with the police" but "was not present for the police interview." (Doc. No. 9-21 at 91.) However, the petitioner did not present an IATC claim based on this testimony during post-conviction proceedings, either pro se (*see id.* at 41–43) or through counsel (*see id.* at 76–78, 81–82).

Furthermore, the mere fact that counsel at the penalty phase of the petitioner's prosecution did not uncover and present as a mitigating factor the petitioner's assistance to police in an unrelated matter[6]—when he informed police of the location of his then-brother-in-law, Richard Keele, who was "on the run for robbing Walmart, Lowes, and Home Depot stores" (Doc. No. 13-1 at 13)—is plainly insufficient to warrant further consideration as a substantial Sixth Amendment claim. The petitioner himself would have been the only source of such information readily available to counsel, and by his own admission, the petitioner did not disclose this prior instance of cooperation with authorities to anyone until after his post-conviction evidentiary hearing. "The reasonableness of counsel's strategic decisions, including what avenues to pursue in the search for mitigating evidence, is substantially influenced by the defendant's statements or silence." *Ricks v. Lumpkin*, No. 4:20-CV-1299-O, 2023 WL 8224931, at *11 (N.D. Tex. Sept. 26, 2023) (citing *Strickland v. Washington*, 466 U.S. 668, 691 (1984)). In view of the petitioner's silence on this potential mitigating evidence until the case had been heard and taken under advisement by the post-conviction court, as well as the evidence's uncompelling weight vis-à-vis the aggravated sexual battery offenses of conviction,[7] Claim 4 is not substantial and therefore its procedural default cannot be excused.

---

[6] The state statute that pertains to "Mitigating factors," § 40-35-113 of the Tennessee Code, provides in pertinent part that, "[i]f appropriate for the offense, mitigating factors may include, but are not limited to: . . . (9) The defendant assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses; (10) The defendant assisted the authorities in locating or recovering any property or person involved in the crime; . . . and, (13) Any other factor consistent with the purposes of this chapter." Tenn. Code Ann. § 40-35-113.

[7] *See State v. Pike*, No. 02C01-9509-CC-00261, 1997 WL 13740, at *2 (Tenn. Crim. App. Jan. 16, 1997) (finding no abuse of sentencing court's discretion where evidence that defendant had "been assisting the police in uncovering other criminal activity" was "not give[n] . . . much weight" in sentencing for drug sale crime by offender who had "a substantial previous history of both criminal convictions and criminal behavior").

20

### b. Due Process and Equal Protection Claims

Claim 7 asserts a violation of the petitioner's due process rights at trial, when the State allegedly introduced evidence of his prior bad acts without giving advance notice of its intent to do so. Claim 8 asserts an equal protection violation during plea proceedings, when the trial court failed to preserve a record of the plea offers made by the State and rejected by the petitioner. These claims were never raised in state court, either on direct review or during post-conviction proceedings, and cannot be raised there now. The claims are thus procedurally defaulted, and the petitioner has not made any effort to demonstrate cause and prejudice excusing the default. Even if he had, the record reveals that the admissibility of evidence of an uncharged, prior bad act during the State's case-in-chief was the subject of a motion in limine that was resolved by agreement in open court, with both parties acknowledging that the evidence could come in. (*See* Doc. No. 9-2 at 10–12). It is also the case that, unlike the scenario where a plea offer is accepted—which "involv[es] a formal court appearance with the defendant and all counsel present," the entry of a plea, and the creation of a record—"[w]hen a plea offer has lapsed or been rejected, . . . no formal court proceedings are involved." *Missouri v. Frye*, 566 U.S. 134, 143 (2012). For these reasons, Claims 7 and 8 are not subject to further review in this court.

In sum, ten of the Amended Petition's eleven claims are either defaulted or noncognizable and thus not subject to further habeas review. This leaves one viable habeas claim, Claim 1.

### 3. Merits Review of Claim 1

The remaining claim of the Amended Petition, Claim 1, was properly exhausted before the TCCA as a claim that trial counsel rendered ineffective assistance when he failed to communicate to the petitioner all of the plea offers made by the State. Before the TCCA, the petitioner asserted, through counsel, that his "claim comes down to the credibility of testimony at the [post-conviction

review] hearing," where "[t]rial counsel testified that he and [the petitioner] discussed all plea offers, and that [the petitioner] rejected each offer," while "[the petitioner] called three witness[es] who testified that trial counsel stated that he declined offers before consulting [the petitioner]." (Doc. No. 9-24 at 17.) Those three witnesses were the petitioner's mother, his brother, and the petitioner himself. (*Id.* at 17–18.) Continuing to believe that the state courts wrongly decided this issue of witness credibility, the petitioner renews the substance of this claim before this court, relying on the same post-conviction testimony that plea offers were declined by counsel without his knowledge or approval. (Doc. No. 1 at 5, 16.)

As mentioned above, *Strickland*'s test for constitutionally ineffective assistance has two prongs, deficient performance and prejudice. To meet the first prong, the petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [he] must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688–89 (quoting *Michel v. State of La.*, 350 U.S. 91, 101 (1955)). The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the . . . proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). It requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

When an exhausted claim of ineffective assistance of counsel is raised in a federal habeas petition, review under AEDPA is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009), in that "*Strickland* requires deference to counsel and AEDPA requires deference to the

state court." *Moody v. Parris*, No. 20-5299, 2022 WL 3788503, at *4 (6th Cir. Aug. 30, 2022). The question then is not whether the petitioner's counsel was ineffective; rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). In this case, the TCCA analyzed the petitioner's claims under *Strickland*, as follows:

> When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368–72 (1993). . . .

> The two-prong *Strickland* test further extends to plea offers with "defense counsel ha[ving] the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). Further, "[t]o show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Id.* at 147. "Defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." *Id.* at 148.

> The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *see Dellinger*, 279 S.W.3d at 293–94. On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Id.* Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457.

> At the post-conviction hearing, trial counsel testified that he worked about "seventy to eighty hours total" on the Petitioner's case. Trial counsel testified that the Petitioner maintained he "didn't do any of the things he was accused of" and did

23

not want to serve jail time. Regardless, trial counsel asserted that he discussed a "loose" offer of split confinement with the Petitioner and that the Petitioner rejected the offer. Although trial counsel could not recall any other specific plea offers, he was sure the Petitioner would have rejected the offers because the Petitioner maintained his innocence through trial.

[Petitioner's former sister-in-law,] Ms. Palacios[, who was present at trial and at one meeting between trial counsel and Petitioner in counsel's office,] testified that she did not hear trial counsel reject an offer on the Petitioner's behalf and could only recall the Petitioner's telling trial counsel at trial that he wanted to accept an offer. [Petitioner's mother,] Ms. Moreno[,] testified that she was present for some meetings between the Petitioner and trial counsel, but she did not understand the conversations. [Petitioner's brother,] Mr. Diaz[,] testified that during a meeting at trial counsel's office, he learned that trial counsel had rejected a plea offer on behalf of the Petitioner; however, the Petitioner was not present during this meeting. Additionally, Mr. Diaz asserted that the Petitioner was adamant that he was innocent. The Petitioner testified that trial counsel had only relayed a plea offer from the State after trial counsel had rejected the offer.

In its order, the post-conviction court found that the witness testimony from Ms. Moreno and Mr. Diaz was "troubling" because trial counsel would have had to communicate "privileged information outside of the Petitioner's presence to the witnesses." The court credited trial counsel's testimony that he relayed all offers from the State to the Petitioner and that all offers were rejected because the Petitioner maintained his innocence and did not want to go back to jail.

The Petitioner has failed to show by clear and convincing evidence that trial counsel did not relay plea offers to him and thereby rendered deficient performance. The post-conviction court credited trial counsel's testimony, and the record supports its finding that trial counsel relayed all plea offers to the Petitioner. The Petitioner did not want to accept a plea offer and maintained his innocence through trial. Accordingly, we do not find any merit in the Petitioner's ineffective assistance claim.

*Diaz v. State*, 2020 WL 2781591, at *6–8.

The TCCA correctly identified and summarized the *Strickland* standard applicable to the petitioner's claim. Accordingly, the critical question is whether the state court applied *Strickland*'s first prong reasonably in reaching its conclusion that, while a failure to relay plea offers would amount to deficient performance, the petitioner had failed to prove his allegation that plea offers were, in fact, not relayed. In arguing for his position that the TCCA's decision was unreasonable,

24

the petitioner reasserts the same testimony that was before the post-conviction trial court and the TCCA: that counsel told him of the State's offer of 20 years at 35% in counsel's law office, but only after counsel had already rejected it and that counsel told him in the courthouse of an offer of 1 year at 100% that he'd likewise already rejected. (*Compare* Doc. No. 1 at 5, 16 *with* Doc. No. 9-22 at 72–74.)

The reasonableness of the TCCA's jumping-off point—that deficient performance under *Strickland* would be established by proof that counsel rejected formal, favorable plea offers without the petitioner's knowledge or consent—is well established. *See Missouri v. Frye*, 566 U.S. at 145 ("This Court now holds that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. … When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires."). In the post-conviction trial court, the petitioner was required to prove "by clear and convincing evidence" that such offers were in fact rejected unilaterally by counsel. Tenn. Code Ann. § 40-30-110(f). That court found that the petitioner failed to carry this burden after weighing the testimony of counsel, the petitioner, and the petitioner's mother and brother. The TCCA did not presume the correctness of this credibility finding but determined that it was supported by a preponderance of the evidence of record, which showed "that trial counsel relayed all plea offers to the Petitioner," who rejected them because he "did not want to accept a plea offer and maintained his innocence through trial." *Diaz v. State*, 2020 WL 2781591, at *8. It is the reasonableness of this factual determination "in light of the evidence presented in the State court proceeding" that is at issue here, on federal habeas review. 28 U.S.C. § 2254(d)(2).

25

To re-state the strictures of the § 2254(d)(2) standard that were set out previously in this opinion, a district court reviewing a claim decided on the merits in state court must give the state-court decision the benefit of the doubt, *Cullen v. Pinholster*, 563 U.S. at 181, and may not find a state court factual determination to be unreasonable simply because of a subjective disagreement with the determination. *See Brumfield v. Cain*, 576 U.S. 305, 314 (2015) ("If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination.") (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)) (internal quotation marks omitted). Rather, the determination must be *objectively* unreasonable in light of the evidence presented in state court. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Thus, the petitioner in this case must show that the post-conviction evidentiary record was such that "it was unreasonable to credit" trial counsel's testimony that all firm offers, including the 20-year and 1-year offers, were relayed to the petitioner, who rejected them because they included time in prison and he maintained his innocence. *Rice v. Collins*, 546 U.S. 333, 338–39 (2006); *see* Doc. No. 9-22 at 18; *Diaz v. State*, 2020 WL 2781591, at *8.

The TCCA noted (but did not endorse) the post-conviction trial court's hesitance to credit the portion of the petitioner's family's testimony that would imply that counsel "possibly" violated an ethical norm by disclosing privileged information (Doc. No. 9-21 at 95), a hesitance with which this court frankly disagrees. But that disagreement is at best tangential to the salient question of whether the TCCA reasonably determined that the record evidence supported the finding that counsel did not perform deficiently. The answer to that question is yes.

In reviewing the evidence from the post-conviction hearing, the TCCA recited that the petitioner's family members testified to having attended meetings between the petitioner and counsel at counsel's law office. However, the petitioner's mother testified that she "didn't

26

understand really well" what was said in those meetings. *Diaz v. State*, 2020 WL 2781591, at *4; (Doc. No. 9-22 at 53.) The petitioner's brother clarified on cross-examination that one such meeting occurred during the time before the petitioner bonded out of jail, and that it was during this meeting that counsel revealed that he had unilaterally rejected a plea offer of one year in custody. *Diaz v. State*, 2020 WL 2781591, at *5; (Doc. No. 9-22 at 64.) But trial counsel testified that the meetings at his law office began after the petitioner made bond, not while he was in jail, and that the plea offers he communicated to the petitioner were rejected "because he did not want to go to jail again." *Diaz v. State*, 2020 WL 2781591, at *3–4; (Doc. No. 9-22 at 11, 38.) The petitioner's brother confirmed that the petitioner "was always very repetitive saying that he had not committed the crimes he was charged with and that [he] was never willing to go to jail for it." *Diaz v. State*, 2020 WL 2781591, at *5 (internal quotation marks omitted); (Doc. No. 9-22 at 66.) The petitioner testified that trial counsel had rejected plea offers before telling him, or against his wishes. *Id.* The post-conviction trial court resolved the conflict in this testimony in favor of counsel and against the petitioner.

In its analysis, the TCCA found that the petitioner had failed to carry his burden of proving that the trial court got it wrong, and that the record supported the trial court's "finding that trial counsel relayed all plea offers to the Petitioner[,] [but] [t]he Petitioner did not want to accept a plea offer and maintained his innocence through trial." *Diaz v. State*, 2020 WL 2781591, at *8. This determination, and the consequent determination that the petitioner's IATC claim has no merit, *id.*, were objectively reasonable in light of the post-conviction evidence. AEDPA therefore requires that the TCCA's decision not be disturbed. *See Burt v. Titlow*, 571 U.S. 12, 22 (2013) (noting that, "[a]lthough a defendant's proclamation of innocence does not relieve counsel of his normal responsibilities under *Strickland*, it may affect the advice counsel gives"; holding that state

27

court's factual finding that counsel's plea advice was based on petitioner's claim of innocence, and its determination that plea advice satisfied *Strickland*, were "within the bounds of reasonableness under AEDPA" and therefore could not be disturbed by habeas court). Accordingly, Claim 1 is without merit.

## IV. Conclusion

For the foregoing reasons, the Amended Petition will be **DENIED** and this action will be **DISMISSED** with prejudice.

The court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases. A petitioner may not take an appeal unless a district or circuit judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citations and internal quotation marks omitted). "[A] COA does not require a showing that the appeal will succeed," but courts should not issue a COA as a matter of course. *Id.* at 337.

Because reasonable jurists could not debate whether the petitioner's claims should have been resolved differently or are deserving of encouragement to proceed further, the court will **DENY** a COA. The petitioner may seek a COA directly from the Sixth Circuit Court of Appeals. Rule 11(a), Rules Gov'g § 2254 Cases.

An appropriate order will enter.

Aleta A. Trauger
United States District Judge